IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CITIZENS INSURANCE COMPANY of AMERICA, a Michigan corporation; and HANOVER INSURANCE COMPANY, a New Hampshire corporation <br><br> Plaintiffs, <br> vs. <br><br> LSL INDUSTRIES, INC., an Illinois corporation, and VANESSA INGRAM SANCHEZ, individually and on behalf of all others similarly situated, <br><br> Defendants. | Civil Action No.: 1:22-cv-06247 <br><br> Hon. Judge Thomas Durkin |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, Citizens Insurance Company of America ("Citizens") and Hanover Insurance Company ("Hanover"), pursuant to F.R.C.P. 56 and L.R. 56.1(a)(1), submit the following Memorandum of Law in Support of Their Motion for Summary Judgment:

### I. INTRODUCTION

The Access or Disclosure of Personal or Confidential Information Exclusion and Employment-Related Practices Exclusion in the Policies Plaintiffs issued to LSL Industries, Inc. ("LSL") both unambiguously preclude Plaintiffs' duty to defend and indemnify LSL for an underlying putative class action alleging violations of the Illinois Biometric Information and Privacy Act ("BIPA"). The Hanover Umbrella Policy also does not afford coverage because it contains an exclusion that plainly applies to "personal injury". Additionally, LSL delayed for over approximately 18 months in giving notice to Plaintiffs of the underlying suit, and the irrefutable evidence demonstrates that the delay was unreasonable as a matter of law. Plaintiffs' defense and indemnity obligations, therefore, are also barred by LSL's breach of the Notice condition in the

1

Policies. Accordingly, based on the incontrovertible facts, Plaintiffs are consequently entitled to judgment in their favor on Counts I, II, IV-IX, and XI as a matter of law.[1]

## II. STATEMENT OF INCONTROVERTIBLE FACTS

### A. LSL Background and Insurance Policies

LSL has been in operation for thirty-five (35) years. (SOF 9). As of January 1, 2023, LSL had approximately one hundred and fifty (150) employees. (SOF 10). Citizens issued Commercial Lines Policy No. ZBC H466451 00 to LSL, effective 1/1/2021 to 1/1/2022 (the "Citizens Policy"). (SOF 12). Hanover Insurance Company issued Commercial Follow Form Excess and Umbrella Policy No. UHC H466453 00 to LSL Industries, Inc., effective 1/1/2021 to 1/1/2022 (the "Hanover Policy" or "Umbrella Policy"). (SOF 19).

### B. The Sanchez Lawsuit and Notice to Citizens and Hanover

On January 15, 2021, Vanessa Ingram Sanchez, individually and on behalf of all others similarly situated filed a putative class action against LSL Industries, Inc. dba LSL Healthcare ("LSL") in the Circuit Court of Cook County, Illinois, bearing Case No. 21 CH 00220 (the "Sanchez Lawsuit"). (SOF 31). The Complaint alleges that when LSL hires an employee, they are enrolled in an employee database(s) using a scan of his or her fingerprint, and defendant uses the database(s) to monitor the time worked by its employees. (SOF 32). According to the Complaint, LSL disregarded its employees' statutorily protected privacy rights by unlawfully collecting, obtaining, storing, disseminating, and using her and other similarly-situated employees' biometric data in violation of the Illinois Biometric Information Privacy Act ("BIPA"). (SOF 34).

---

[1] Plaintiffs reserve the right to assert the Recording and Distribution of Material Exclusion and move for summary judgment on Counts III and X if the Illinois Appellate Court holds the exclusion applies to BIPA in Appeal No. 1-22-1160, *Sanchez v. The National Fire Ins. Co. of Hartford, et al.*

LSL received notice of the Sanchez Lawsuit on January 19, 2021 from its attorneys Smith Amundsen. (SOF 38). In January 2021, LSL engaged Smith Amundsen to represent it against the Sanchez Lawsuit. (SOF 39). The Amundsen Davis website lists twelve different offices. (SOF 41). Additionally, the Amundsen Davis website lists insurance claims counseling and insurance litigation among its services. (SOF 42).

Ashok Luthra, former President of LSL and its Rule 30(b)(6) corporate representative, testified in this action that LSL did not notify its insurance carriers or insurance broker/producer of the Sanchez Lawsuit when it became aware of the suit because "there was clearly nothing to report" based on advice from Amundsen Davis. (SOF 43). The Sanchez Lawsuit was stayed on April 20, 2021. (SOF 44). LSL was never advised that the Citizens/Hanover Policies did not provide coverage for the Sanchez Lawsuit. (SOF 45). In August 2022, LSL's counsel advised it to put its insurance carriers on notice of the Sanchez Lawsuit. (SOF 46). LSL first notified Bradish Associates, Ltd, its insurance producer, of the Sanchez Lawsuit on August 9, 2022. (SOF 47). Plaintiffs received notice of the Sanchez Lawsuit on August 10, 2022. (SOF 48). LSL's Director of Finance was responsible for notifying LSL's insurance agent of any claims and notified its insurance agent of other claims. (SOF 11).

### III. ARGUMENT

#### A. Legal Standard

Summary judgment is proper if the record shows that there is no genuine issue as to any material fact, and that the moving parties are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under Illinois law, "the interpretation of an insurance policy is a question of law that is properly decided by way of summary judgment." *Twenhafel v. State Auto Property & Casualty Insurance Co.*, 581 F.3d 625, 628 (7th Cir. 2009). Where the issues to be decided are purely legal,

and the parties have filed cross-motions for summary judgment on that issue, the court must resolve the legal issue and enter judgment "as a matter of law" for one side or the other. *QBE International Insurance Ltd. v. Clark*, No. 01 C 0508, 2003 U.S. Dist. LEXIS 19106, at *4 (N.D. Ill. Oct. 23, 2003).

To determine whether an insurer has a duty to defend an action against the insured, a reviewing court must compare the allegations of the underlying complaint to the relevant portions of the Policy. *Outboard Marine Corp v. Liberty Mutual Ins. Co.*, 154 Ill. 2d 90, 108 (1992). An insurer has no duty to defend where it is clear from the face of the underlying complaint that the allegations set forth in the complaint fail to state facts that bring the case within, or potentially within, the coverage of the policy. *See Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 363 (2006). A single unequivocal exclusion is sufficient to show that an insurer does not have a duty to defend the insured. *See, e.g., Hartford Cas. Ins. Co. v. Dental USA, Inc.*, No. 13 C 7637, 2014 U.S. Dist. LEXIS 85529, 2014 WL 2863164, at *4 (N.D. Ill. June 24, 2014). The duty to defend is broader than the duty to indemnify, and thus if an insurer has no duty to defend, it has no duty to indemnify. *National Casualty Co. v. McFatridge*, 604 F.3d 335, 338 (7th Cir. 2010).

### B. The Access or Disclosure of Confidential or Personal Information Exclusion Bars Plaintiffs' Duty to Defend and Indemnify the Sanchez Lawsuit.

The Policies preclude coverage for "personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information. In *Thermoflex Waukegan, Ltd. liability Co. v. Mitsui Sumitomo Insurance USA, Inc.,* 595 F. Supp. 3d 677 (N.D. Ill. 2022), the court correctly held that this exclusion unambiguously applies to biometric

information and precludes an insurer's duty to defend and indemnify a BIPA class action suit.[2] It reasoned that the term "any" has a broad meaning, which ordinarily means "one or some indiscriminately of whatever kind", and that "[t]here is nothing ambiguous about the phrase 'any access to or disclosure of any person's . . . personal information.'" *Id.* at 682. Further, the term "'[i]nclude' is a word of illustration, not limitation. Therefore, the words in the Access/Disclosure exclusion that appear after 'including' cannot limit the scope of the preceding clause 'any access to or disclosure of any person's . . . personal information'". *Id.* at 683. The court also properly found that, by its plain language, the exclusion applies to both "confidential" information and to an individual's "personal" information, and that biometric information is nothing if not "personal" information. *Id.* at 684-85.[3] Biometric information consequently need not be confidential to fall within the exclusion.[4] *Id.*

*Mitsui* also correctly rejected the argument that the exclusion creates illusory coverage or otherwise creates an ambiguity in the exclusion. The insured argued that the court's construction of the Access/Disclosure exclusion would swallow any coverage the policies provide for lawsuits alleging publication of material that violates a person's right of privacy." Judge Lee found that this was incorrect, reasoning that the right to privacy encompasses more than a person's right to the maintain the confidentiality of their personal information, such as a person's right not to be placed

---

[2] *American Family Mutual v. Carnagio Enter.*, No. 20 C 3665, 2022 U.S. Dist. LEXIS 58358, *20-28 (N.D. Ill. Mar. 30, 2022) and *Continental Western Insurance Co. v. Cheese Merchants of America, LLC,* 631 F. Supp. 3d 503 (N.D. Ill. 2022) also held this exclusion applies to biometric information.

[3] *See also Herron v. Gold Std. Baking, Inc.,* 2021 U.S. Dist. LEXIS 69336, 2021 WL 1340804, at *1 (N.D. Ill. 2021)("Enacted in 2008, BIPA aims to protect the privacy interests of ***personal*** biometric information, including fingerprints.")(emphasis added).

[4] Nevertheless, the terms "biometric information" and "biometric identifier" information fall squarely within BIPA's definition of "confidential and sensitive information"—that is, "personal information that can be used to uniquely identify an individual." *Mitsui,* *14 (citing 740 Ill. Comp. Stat. 14/10). This is further borne out by Section 14/15(e), which describes biometric information as a type of "confidential and sensitive information." *Id.*

in a false light. *Id.* at *685-686. Claims for false light invasion of privacy seek damages arising out of a publication of material that violates a person's right of privacy but do not fall under the Access/Disclosure exclusion because they do not arise out of any access to or disclosure of any person's confidential or personal information, and thus a broad construction of the Access/Disclosure exclusion does not render coverage illusory. *Id.*[5] In addition to false light and appropriation invasions of privacy that do not fall within the scope of the Access/Disclosure Exclusion, other publications of material that violate a person's right to seclusion, rather than secrecy, are also unaffected by the Access/Disclosure Exclusion.[6] Thus, coverage remains intact for various publications of material that violate a person's right of privacy that do not involve publication of personal information. The exclusion, therefore, does not result in illusory coverage and it is not unreasonable to apply it as written.[7]

As a result, the aforementioned decisions correctly concluded that the exclusion plainly applies on its face to biometric information, and therefore there is no need to resort to canons of construction to resolve any ambiguity. *Mitsui*, 683; *Carnagio*, *24; *Cheese Merchants*, *18-19. However, even assuming there was a facial ambiguity in the exclusion, then pursuant to *noscitur*

---

[5] *See also Cheese Merchants of America, LLC* at *20-21 (rejecting the insured's "illusory coverage" argument and citing to Judge Lee's opinion in finding that the right to privacy encompasses more than a person's right to the maintain the confidentiality of their personal information because the right to privacy prohibits the appropriation of one's name or identity for personal gain, and these torts would not necessarily fall within the exclusion because they do not inherently involve accessing or disclosing confidential or personal information.).

[6] *See Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 368 (2006)(" '[Right of privacy' connotes both an interest in seclusion and an interest in the secrecy of personal information. Accordingly, the policy language 'material that violates a person's right of privacy' can reasonably be understood to refer to material that violates a person's seclusion.").

[7] *See Cincinnati Insurance Co. v. Eastern Atlantic Insurance Co.*, 260 F.3d 742, 747 (7th Cir. 2001)(policy was not illusory under Illinois law because it covered some injuries resulting from certain factual situations, just not the ones at issue, thus the exclusion though broad, was not so broad as to make the coverage illusory and it must be enforced according to its terms).

*a sociis,* BIPA still falls within exclusion as it is "any other type of nonpublic information" generally similar to the categories enumerated in the exclusion. *Noscitur a sociis* counsels that a word may be defined by an accompanying word, and that, ordinarily, the coupling of words denotes an intention that they should be understood in the same general sense. *See Beecham v. United States*, 511 U.S. 368, 371, (1994)("That several items in a list share an attribute counsels in favor of interpreting the other items as possessing that attribute as well."). Because BIPA and the categories enumerated in the exclusion share a common attribute in that all involve information that individuals and companies have a heightened interest in keeping from third-parties or the public at large, the exclusion must be construed to apply to biometric information. *Mitsui*, at 683-84; *Carnagio,* *23-24.

The cases that have found the Access/Disclosure Exclusion does not apply to biometric information suffer from flawed reasoning. Some of those decisions improperly applied canons of construction such as *ejusdem generis* to find a purported ambiguity in the exclusion's clear, plain language[8] and/or ignore that biometric information need not be "confidential" to fall within the exclusion as "personal" information.[9] Many of the cases also incorrectly found an ambiguity because applying the exclusion as written would preclude "coverage that the policy otherwise explicitly purports to provide in defining a covered 'personal or advertising injury[.]"[10] That

---

[8] *See Tourdot v. Rockford Health Plans, Inc.,* 439 F.3d 351, 353-354 (7th Cir. 2006)(Canons of construction, such as *ejusdem generis,* "provide[ ] guidance on how to interpret language where meaning is not plain" and "the canon is intended only as an aid to ascertaining the intent of the drafters when uncertainty or ambiguity exists". Thus, canons of construction may not be used to defeat the obvious purpose or plain meaning of the text, and therefore, cannot be used to create an ambiguity).

[9] *See Citizens Insurance Co. of America v. Thermoflex Waukegan, LLC,* 588 F. Supp. 3d 845 (N.D. Ill. 2022); *Society Insurance v. Cermak Produce No. 11, Inc.,* No. 21 CV 1510, 2023 U.S. Dist. LEXIS 129588 (N.D. Ill. July 27, 2023).

[10] *See Citizens Insurance Co. of America v. Mullins Food Products*, No. 22-cv-1334, 2023 U.S. Dist. LEXIS 131973, at *27 (N.D. Ill. July 31, 2023); *Continental Western Insurance Co. v. Tony's Finer Foods Enterprises,* No. 22-cv-3575, 2023 U.S. Dist. LEXIS 114884 (N.D. Ill. July 5, 2023); *Cermak Produce No.*

reasoning is untenable because it is axiomatic that "any exclusion narrows coverage; that is its purpose". *See Farmers Automobile Insurance Ass'n v. St. Paul Mercury Insurance Co.*, 482 F.3d 976, 979 (7th Cir. 2007)(To narrow coverage is not to make coverage illusory. Where coverage is not illusory the exclusion must be applied as written). To be sure, an exclusion is relevant only when the insurance policy provides coverage in the first instance.[11] Thus, the Access/Disclosure Exclusion necessarily narrows coverage for "personal and advertising injury", *i.e.,* a publication of information that violates a person's right of privacy. Refusing to enforce the exclusion because it limits the coverage provided to only certain publications of information that violate a person's right of privacy is antithetical to the entire purpose of a policy exclusion and non-sensical.

Accordingly, the Court should follow the more well-reasoned decisions in *Mitsui, Carnagio*, and *Cheese Merchants* and find that the Access/Disclosure Exclusion unambiguously applies to biometric information and precludes Plaintiffs' duty to defend and indemnify the Sanchez Lawsuit.

### C. The Employment-Related Practices Exclusion also Precludes Plaintiffs' Defense and Indemnity Obligations for the Sanchez Lawsuit.

The Policies also contain an Employment-Related Practices Exclusion, which in relevant part, precludes coverage for "personal and advertising injury" to a person arising out of

---

*11, Inc.*, 2023 U.S. Dist. LEXIS 129588, at *11-12. These decisions relied in part on *Citizens Insurance Co. of America v. Wynndalco Enterprises, LLC,* 70 F.4th 987 (7th Cir. 2023). However, in *Wynndalco*, the court solely held that the Distribution of Material in Violation of Statutes Exclusion does not apply to BIPA and did not address the Access/Disclosure Exclusion. Moreover, the *Wynndalco* decision actually supports applying the Access/Disclosure Exclusion to biometric information as the Seventh Circuit admonished that courts must consider the different types of privacy interests at issue when evaluating what is meant by the term "privacy" in an a insurance policy. *Id.* at 1003.[10] That is exactly what Judge Lee did in *Mitsui* and *Carnagio* in properly reasoning and concluding there is no ambiguity in the Access/Disclosure Exclusion.

[11] *See Stoneridge Development Co. v. Essex Insurance Co.,* 382 Ill. App. 3d 731, 756 (2nd Dist. 2008)(where the damage does not fall within the policy's coverage, there is no need to consider the applicability of any exclusions.).

employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person. "Personal and advertising injury" is limited to a publication of material that violates a person's right of privacy, *i.e.*, an unauthorized disclosure of an employee's biometric information to a third party. Stated otherwise, scanning fingerprints/collecting biometric information alone is not covered by the Insuring Agreement in the Policies in the first instance. Only BIPA violations that involve a violation an employee's right of privacy due to disclosure of the employee's biometric information are at issue when discussing the applicability of this exclusion. The Sanchez Complaint alleges LSL disregarded it employees' statutorily protected privacy rights by unlawfully disseminating their biometric data. (SOF 34).

The use of the phrase "such as" in the exclusion is illustrative and not intended to be exhaustive or limitative. *See Jon Davler, Inc. v. Arch Insurance Co.,* 229 Cal. App. 4th 1025, 1033-34 (2014)(finding use of the term "such as" confirmed the list was illustrative, not exhaustive).[12] Invasion of privacy shares general similarity with several of the offenses specifically enumerated in the exclusion, including defamation, harassment, and humiliation.[13] Accordingly, employment-related invasion of privacy is a practice, policy, act or omission, "such as" or similar to coercion,

---

[12] *See White v. United Airlines, Inc.,* 416 F. Supp. 3d 736, 740 (N.D. Ill. 2019), rev'd on other grounds, 987 F.3d 616 (7th Cir. 2021)("such as" is a "phrase of general similitude indicating that there are includable other matters of the same kind which are not specifically enumerated by the standard").

[13] *See Strange v. Collins*, No. 04-4017, 2006 U.S. Dist. LEXIS 49034, at *8 (C.D. Ill. July 18, 2006)(The claim of false light invasion of privacy is largely similar to the defamation claim.); *Gannett Co. v. Anderson,* 947 So. 2d 1, 9, 31 Fla. L. Weekly 2616 (Dist. Ct. App. 2006)(The injuries which may result from defamation and invasion of privacy are similar in nature.); *Williams v. McKamie*, No. 04-2516-KHV, 2005 U.S. Dist. LEXIS 11512, at *6 (D. Kan. June 13, 2005)(Defamation and invasion of privacy are similar in most aspects, and courts often treat these actions claims similarly.); *see also Conway v. Cook County*, No. 98 C 5324, 1999 U.S. Dist. LEXIS 236, at *25-26 (N.D. Ill. Jan. 7, 1999)(recognizing that conduct constituting invasion of privacy may also constitute sexual harassment).

demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution.

In *American Family Mutual Insurance Co. v. Caremel, Inc*., No. 20 C 637, 2022 U.S. Dist. LEXIS 3475, *10-111 (N.D. Ill. Jan. 7, 2022), the court correctly concluded that BIPA protects a right to privacy of biometric information and that a violation of BIPA is of the same nature as the exemplar employment-related practices listed in the subject exclusion because each can cause an individual harm to an employee and thus is "directed at that person". Indeed, unauthorized disclosure of an employee's biometric information to a third party causes harm to that individual employee. *See Rosenbach,* 2019 IL 123186, ¶ 35, quoting 740 ILCS 14/5(c).[14] That LSL may have disclosed more than one employee's biometric information does not alter that each individual employee subject to a disclosure is injured. *See Id*. at *11 (That the conduct harmed many employees at the same time does not change this analysis.). Thus, a disclosure of an employee's biometric information is an employment-related practice, policy, act or omission directed at that person. *See Id*.

The other decisions that have addressed this exclusion and concluded it does not apply in the BIPA context have mistakenly focused on whether scanning or collecting biometric information is a practice, policy, act or omission that falls within the Exclusion.[15] As discussed, however, scanning/collecting biometric information is not "personal and advertising injury". The actual issue is whether a publication of an employee's biometric information that violates that

---

[14] "Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions."

[15] *See Thermoflex Waukegan, LLC*, 588 F. Supp. 3d 845; *Highland Baking Co., Inc.,* 2022 U.S. Dist. LEXIS 74280; *State Automobile Mutual Insurance Co. v. Tony's Finer Foods Enterprises,* 589 F. Supp. 3d 919 (N.D. Ill. 2022); *Carnagio Enter.,* No. 20 C 3665, 2022 U.S. Dist. LEXIS 58358; *Cheese Merchants*, 2022 U.S. Dist. LEXIS 40567.

employee's right of privacy is an employment-related practice, policy, act, or omission directed at that person. Thus, those decisions failed to consider that an invasion of an employee's privacy is similar to the exemplar practices listed in the exclusion, and that an unauthorized disclosure of an employee's biometric information harms that specific employee and is thus necessarily directed at that employee.[16] Plaintiffs, therefore, submit that the Court should not rely on those decisions, and instead hold that the Employment-Related Practices Exclusion precludes Plaintiffs' duty to defend and indemnify the Sanchez Lawsuit.

### D. LSL's Over Eighteenth Month Delay in Providing Notice to Plaintiffs of the Sanchez Lawsuit was Unreasonable and a Breach of the Notice Condition as a Matter of Law.

The Policies require LSL to provide notice to Plaintiffs of a suit against any insured "as soon as practicable". (SOF 18, 30). In Illinois, "notice provisions are valid prerequisites to coverage and not mere technical requirements which the insured is free to overlook or ignore with impunity." *Kerr v. Illinois Central Railroad Co.*, 283 Ill. App. 3d 574, 582 (1996). Where the insured fails to comply with a notice provision, the insurer will be relieved from its duties to defend and indemnify under the policy. *Northbrook Property & Casualty Insurance Co. v. Applied Systems*, 313 Ill. App. 3d 457, 464 (1st Dist. 2000). Where, as here, the policy requires the insured to notify the insurer of a lawsuit "as soon as practicable," the test is whether notice was given within a reasonable time. *Country Mutual Insurance Co. v. Livorsi Marine, Inc.*, 358 Ill. App. 3d 880, 888 (1st Dist. 2004), aff'd 222 Ill. 2d 303 (2006). If the facts are undisputed, the reasonableness of notice to an insurer

---

[16] In *Mullins*, the court also improperly found that the exclusion requires that an employment-related practice, policy, act or omission must relate to an employee's performance. However, that reads language into the exclusion that does not exist. Further, such a construction is negated by the offenses listed - harassment, humiliation, discrimination - that may occur in the workplace but do not necessarily relate to an employee's performance.

11

is a question of law appropriate for disposition on summary judgment. *Kerr*, 283 Ill. App. 3d at 583.

In determining whether notice was given within a reasonable time, courts consider "the language of the notice provision, the insured's sophistication in commerce and insurance matters, its awareness that a suit was pending and once aware, its diligence in ascertaining whether policy coverage is available." *Livorsi*, 222 Ill. 2d at 317. Once it is determined that the insurer did not receive reasonable notice of a lawsuit, the policyholder may not recover under the policy, regardless of whether the lack of reasonable notice prejudiced the insurer. *Livorsi*, 222 Ill. 2d at 317.

*Acuity v. Osler Industries, Inc.*, 408 Ill. App. 3d 1122 (1st Dist. 2011) is illustrative. In that case, despite being represented by an attorney in the underlying suit, the insured failed to give notice of the suit to its general liability carrier for approximately nine months. In the coverage litigation that ensued, the insured explained in its deposition testimony that it believed the underlying suit to be an "utter farce" that was not "worth bothering an insurance company about" because the insurance company might use the incident as "an excuse to raise [his] insurance." The insured testified it began discussing the underlying suit with its attorney very soon after it was filed, but stated that it never read its insurance policy. The court found that the insured's delay in providing notice was not reasonable as a matter of law. *Id.* at *11. The court reasoned the insured was a sophisticated business entity that was actually represented by counsel at the time the complaint was filed, and the insured was unquestionably aware that a suit was pending against it. *Id.* The insured did not provide any convincing justification for its delay because an insured is generally expected to read its insurance policy, and is bound by the policy regardless such that any purported lack of knowledge of its own insurance policy is not by itself a valid excuse for not following it. *Id.* at *10.

12

Similarly in this case, LSL has been in operation for thirty-five (35) years and has approximately 150 employees. (SOF 9, 10). It has reported other claims to its insurance carriers (SOF 11), and was represented by counsel in the Sanchez Lawsuit the same month it became aware of that suit. (SOF 38-39). LSL, therefore, is a sophisticated company in commerce and insurance.[17] It is also indisputable that LSL was aware of the Sanchez Lawsuit in January 2021. (SOF, 38).

LSL's former President and Rule 30(b)(6) representative testified that LSL did not report the Sanchez Lawsuit to Plaintiffs when it became aware of it because its counsel advised that the case "was not continuing forward, and this may go away on its own and, therefore, there was really nothing to report." (SOF, 43). However, where, as here, the policy requires notice of a suit "as soon as practicable", the insured is not contractually entitled to exercise discretion as to whether to give notice.[18] There is no language in the Policies stating notice of a suit must only be given where the suit has merit. As in *Osler*, LSL is charged with knowledge of the content of its Policies even if it failed to read them. 408 Ill. App. 3d 1122 at *10.

Moreover, courts have regularly found that the insured's counsel's failure to read or appreciate the policy terms does not negate an insured's duty to exercise due diligence in providing notice to its insurer.[19] LSL did not exercise due diligence or act like a reasonably prudent person

---

[17] *See AU Electronics, Inc. v. Harleysville Group, Inc*., 82 F. Supp. 3d 805, 815 (N.D. Ill. 2015)("AU's representation by counsel gave it sophistication in commerce and insurance matters."); *see also MHM Servs., Inc. v. Assurance Co. of Am.,* 2012 IL App (1st) 112171, 975 N.E.2d 1139, 1159 (1st App. 2012)(noting that because insured had a full-time general counsel and local litigation counsel, it was sophisticated in commerce and insurance).

[18] *See MHM Services v. Assurance Co. of America,* 2012 IL App (1st) 112171, ¶ 60 (1st App. 2012)(where policy required notice of suit "as soon as practicable" the insured was not to entitled to exercise discretion as to whether to give notice regardless of the amount of potential liability); *AU Electronics, Inc.,* 82 F. Supp. 3d at 815 (The policy categorically required that Harleysville 'receive written notice of the claim or suit as soon as practicable.' There is no qualification or condition: if suit, then notice.").

[19] *See Northbrook Property & Casualty Insurance Co.,* 313 Ill. App. 3d at 467-68 (seventeenth month delay in notifying insurer unreasonable as a matter of law and court stating "A reasonable insured's attorney would have examined the complaint and relevant policy provisions to gauge the applicability of coverage rather than 'assuming,' as [counsel] did, that coverage was excluded...If [counsel] did indeed find the policies too

here. The Policies clearly and unambiguously state that, "You must see to it that we receive written notice of the claim or "suit" as soon as practicable." (SOF, 18). LSL was represented in the Sanchez Lawsuit throughout by Smith Amundsen, which is indisputably a large law firm that lists insurance claims counseling and insurance litigation among its services. (SOF, 39, 41-42). Counsel's failure to read or understand the terms of the notice provision in the Policies does not excuse LSL from reviewing the Policies, which is legally charged with knowledge of the contents of its Policies in any event. Importantly, LSL was never advised that the Policies did not cover the Sanchez Lawsuit. (SOF, 45). Moreover, on April 20, 2021, the Sanchez Lawsuit was stayed, not dismissed, and thus was not "going away". (SOF, 44). Yet LSL waited until August 10, 2022 to provide notice to Plaintiffs of the suit. (SOF, 48).

The irrefutable evidence thus establishes that LSL had no just cause for delaying for over eighteen months in providing notice to Plaintiffs of the Sanchez Lawsuit. The eighteenth-month delay is unreasonable as a matter of law.[20] Whether Plaintiffs were prejudiced by LSL's delay,

---

complicated to understand, he could have easily conferred with someone knowledgeable in the subject within a reasonable time period to determine if notice and a tender of defense should have been given to [the insurance company]."); *AU Electronics, Inc.,* 82 F. Supp. 3d at 815 (seven month delay was not reasonable where insured was represented by counsel and if the insured's lawyer did not understand the coverage issues, he should have sought help); *Sentinel Insurance Co. v. Cogan,* 202 F. Supp. 3d 831, 839 (N.D. Ill. 2016)(eight month delay unreasonable and court stating, "Had they simply read the Sentinel Policy, they would have seen the unambiguous language of the "Personal and Advertising Injury" provisions. To the extent they were confused about the scope of those provisions…they, along with their litigation counsel retained to defend the underlying suit, had access to all of the resources, tools and information they needed to learn how those provisions are construed under Illinois law."); *Amerisure Insurance Co. v. Laserage Tech. Corp.*, 2 F. Supp. 2d 296 (W.D.N.Y. 1998)(applied Illinois law and found eight month delay unreasonable where insureds immediately contacted their attorney after being served, who was a partner in a 70-attorney law firm which listed insurance law as one of its areas of practice and the attorney summarily dismissed the insured's question of whether there was insurance coverage and finally gave notice seven months later after a different partner at the firm advised that the insureds should give notice of the action to their insurers because the insureds "clearly failed to exercise due diligence…as evidenced by the fact that they did not even review their policies."); *see also Modrowski v. Mote*, 322 F.3d 965, 968 (7th Cir. 2003)("clients ... must 'vigilantly oversee,' and ultimately bear responsibility for, their attorneys' actions or failures").

[20] *See Montgomery Ward & Co. v. Home Ins. Co.*, 324 Ill. App. 3d 441, 449 (1st Dist. 2001)(holding that insured's eight-month or year-long delay in giving notice to insurer was unreasonable); *Philadelphia*

therefore, has no bearing here. *See Livorsi*, 222 Ill. 2d at 317. Accordingly, Plaintiffs have no duty to defend or indemnify the Sanchez Lawsuit due to LSL's breach of the Notice condition in the Policies.

### E. Hanover has No Duty to Defend or Indemnify the Sanchez Lawsuit under the Umbrella Policy.

The Umbrella Liability Coverage Part in the Umbrella Policy contains the same or nearly identical exclusions and Notice condition as those in the Citizens Policy, and therefore, does not provide coverage for the Sanchez Lawsuit for the same reasons.[21] Moreover, the Umbrella Policy excludes coverage for any liability or expense arising from "personal injury". "Personal Injury" is defined, in relevant part, as injury, including consequential "bodily injury", arising out of one or more of the following offenses:***e. Oral or written publication, in any manner, of material that violates a person's right of privacy. The Sanchez Complaint alleges LSL disclosed its employees' biometric information to third parties (SOF, 33), and therefore, alleges oral or written publication, in any manner, of material that violates a person's right of privacy, and thus "personal injury". Accordingly, the "personal injury" exclusion precludes Hanover's duty to defend and indemnify for the Sanchez Lawsuit under the Umbrella Liability Coverage Part of the Umbrella Policy.

### IV. CONCLUSION

For all of these reasons, based on the incontrovertible facts, Plaintiffs have no duty to defend or indemnify LSL for the Sanchez Lawsuit. Accordingly, Plaintiffs are entitled to judgment in their favor on Counts I, II, IV-XI, and XI of the Complaint, as a matter of law.

---

*Indemnity Insurance Co. v. 1801 W. Irving Park, LLC*, No. 11 C 1710, 2012 U.S. Dist. LEXIS 115256, at *23 (N.D. Ill. Aug. 13, 2012)("[t]en months exceeds any understanding of 'as soon as practicable.")(internal citation omitted).

[21] Notably, if the Court finds the Citizens Policy affords coverage for the Sanchez Lawsuit, then the Umbrella Liability Coverage Part of the Umbrella Policy does not provide coverage here for that reason.

Respectfully submitted,

Citizens Insurance Company of America and Hanover Insurance Company

By: /s/ Kelly M. Ognibene
      One of their Attorneys

Jeffrey A. Goldwater, Esq. (ARDC #6189014)
Kelly Ognibene, Esq. (ARDC #6297327)
Lewis Brisbois Bisgaard & Smith, LLP
550 West Adams Street, Suite 300
Chicago, Illinois 60661
312-345-1718
312-345-1778-facsimile
jeffrey.goldwater@lewisbrisbois.com
Kelly.ognibene@lewisbrisbois.com

## CERTIFICATE OF SERVICE

    I hereby certify that on November 15, 2023, I served all parties of record by electronically filing the foregoing document using the ECF system.

    */s/ Kelly M. Ognibene*