**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

CITIZENS INSURANCE COMPANY of AMERICA, a Michigan corporation; and HANOVER INSURANCE COMPANY, a New Hampshire corporation

Plaintiffs,

vs.

LSL INDUSTRIES, INC., an Illinois corporation, and VANESSA INGRAM SANCHEZ, individually and on behalf of all others similarly situated,

Defendants.

Civil Action No.: 1:22-cv-06247

Hon. Judge Thomas Durkin

**PLAINTIFFS' COMBINED RESPONSE IN OPPOSITION TO LSL'S MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, Citizens Insurance Company of America ("Citizens") and Hanover Insurance Company ("Hanover"), pursuant to F.R.C.P. 56 and L.R. 56.1(a)(1), submit the following combined response in opposition to LSL's Industries, Inc.'s ("LSL") Motion for Summary Judgment and reply in support of Plaintiffs' Motion for Summary Judgment:

## I. INTRODUCTION

On December 19, 2023, the Illinois Appellate Court issued its decision in *The National Fire Ins. Co. of Hartford, et al v. Visual Pak Company, Inc., et al.*, Appeal No. 1-22-1160, 2023 IL App (1st) 221160, holding that the Recording and Distribution of Material or Information Exclusion unambiguously applies to BIPA and that *Citizens Insurance Co. of America v. Wynndalco Enterprises, LLC,* 70 F.4th 987 (7th Cir. 2023) is "not an accurate reflection of Illinois law".[1] Plaintiffs thus submit that *Wynndalco* is not controlling here because it did not address the

[1] The *Visual Pak* decision was issued after Plaintiffs filed their summary judgment motion in this action on November 15, 2023 (ECF Nos. 33-35). Plaintiffs reserved the right in their summary judgment materials to move for summary judgment on the Recording and Distribution Exclusion (Counts III and X) if the Illinois

Recording and Distribution of Material Exclusion at issue in this case, whereas *Visual Pak* did concern the subject exclusion. *Wynndalco*, therefore, is distinguishable and the Court should follow *Visual Pak* instead and find the Recording and Distribution Exclusion precludes Plaintiffs' duty to defend and indemnify the Sanchez Lawsuit. Moreover, LSL has failed to demonstrate that the Access or Disclosure of Personal or Confidential Information Exclusion is susceptible to more than one reasonable interpretation and is thus ambiguous. *Visual Pak* also mandates that the exclusion be applied as written because it does not result in "illusory" coverage. The Employment-Related Practices Exclusion is also clearly applicable to the employment-related privacy violations at issue in the Sanchez Lawsuit as the exclusion contains no language requiring the privacy violations relate to an employee's performance.

Lastly, the irrefutable evidence demonstrates that LSL delayed in giving notice to Plaintiffs of the Sanchez Lawsuit because the suit was stayed and/or it thought the suit would "go away". However, the Notice Condition in the Policies unequivocally does not give discretion to the insured to decide as to which "suits" it must provide notice. Rather, the Policies clearly provide if there is a "suit", then there must be notice, and LSL is charged with the knowledge of the contents of its Policies regardless if it bothered to read them. Illinois law also considers LSL to be a sophisticated insured because it was represented by counsel. LSL's failure to provide notice for 18 months, therefore, was unreasonable as a matter of law. Accordingly, Plaintiffs have no duty to defend or indemnify the Sanchez Lawsuit. Plaintiffs are consequently entitled to judgment in their favor on all Counts in the Complaint as a matter of law.[2]

---

Appellate Court held it applies to BIPA. *See*, ECF No. 34, p. 2. Plaintiffs have contemporaneously filed an Amended Motion for Summary Judgment moving on all Counts, including Counts III and X, in the Complaint. As LSL will have the opportunity to address the Recording and Distribution of Material Exclusion in their reply brief, they will not be prejudiced as a result.

[2] LSL seemingly does not refute that the Personal Injury Exclusion in the Umbrella Liability Coverage Part of the Umbrella Policies precludes coverage for the Sanchez Lawsuit as it has not responded to Plaintiffs'

## II. ARGUMENT

### A. The Illinois Appellate Court has Held the Recording and Distribution Exclusion Unambiguously Precludes an Insurer's Duty to Defend and Indemnify a BIPA Suit.

On June 15, 2023, the Seventh Circuit held that the Distribution of Material in Violation of Statutes is ambiguous and does not apply to BIPA. *See Wynndalco Enterprises, LLC*, 70 F.4th 987. At the time *Wynndalco* was decided, neither the Illinois Appellate Court nor Illinois Supreme Court had addressed the Distribution of Material in Violation of Statutes Exclusion or the Recording and Distribution of Material or Information in Violation of Law Exclusion and whether they apply to BIPA. *See Id.*, at 995. However, on December 19, 2023, the Illinois Appellate Court issued its decision in *Visual Pak* and disagreed with *Wynndalco's* reasoning and holding and expressly stated it "did not find it to be an accurate reflection of Illinois law". ¶84. The court explained:

> We find two fundamental flaws in the court's reasoning. First, under Illinois law, the fact that an exclusion has a "broad sweep" (id. at 1004) is not, in and of itself, a reason to deem the coverage "illusory" (id. at 998). It is only when the exclusion has the effect of "swallowing" (id.) the coverage entirely that the exclusion can be deemed illusory—and this is plainly not the case here. And second, the fact that the exclusion might "conflict" (id.) or "clash" (id. at 1004) with other provisions of the coverage that are not presently at issue in this case is not a basis to invalidate the exclusion as applied to this case; our job is not to seek out other problems and solve them, but rather to adjudicate the controversy presently before us. *Id.*

The court observed that it must be extremely careful when talking about "conflicts" in policy language because every exclusion, to some degree, conflicts with the coverage provision, stating "That is the very reason for the exclusion; it is an exception to the general rule of coverage…But the mere fact that an exception conflicts with the coverage provision does not, in and of itself,

---

argument regarding the same. Therefore, Hanover should be granted judgment in its favor on Count VII of the Complaint for that reason.

make it ambiguous—if it did, no exclusion would ever be upheld. Conflict and ambiguity are not the same thing." *Id.*, ¶¶93-94.

The court explained that the mere breadth of an exclusion, alone, does not equate to ambiguity, nor does it render the coverage illusory because "The policy need not provide coverage against all possible liabilities; if it provides coverage against some, the policy is not illusory." *Id.*, ¶97 (internal citations omitted). According to the court, it could in no way conclude the Recording and Distribution Exclusion wholly eviscerates or "swallows" coverage for a publication of material that violates a person's right of privacy because it does not exclude any common-law actions whatsoever, and thus it would not exclude intrusion upon the seclusion of another, appropriation of another's name or likeness, public disclosure of private facts, or publicity placing another in a false light. *Id.* ¶99, ¶103. Nor does the Exclusion eliminate the vast majority of the other coverage under "personal and advertising injury" such as false arrest, false imprisonment, malicious prosecution, wrongful eviction, trespass, or common law definition. *Id.*, ¶¶104-105.

The court went on to criticize *Wynndalco* for focusing on coverage for liability arising from "the use of another's advertising idea in your advertisement" and for "infringing upon another's copyright, trade dress or slogan in your advertisement" because that language was not directly before the court. *Id.*, ¶¶112-117. The Illinois Appellate Court reasoned that it was aware of no authority in Illinois law, nor did the Seventh Circuit cite any, for the proposition that a hypothetical conflict in language that was not at issue before the court could permit the court to essentially nullify an entire coverage exclusion as illusory, even though there is no such conflict between the coverage and exclusion provisions at issue in the case before the court. *Id.* To the contrary, the court should not search for other wrongs to right and should not issue advisory opinions. *Id*. The court thus found that, "The catchall exclusion clearly covers BIPA liability, but it does not

eviscerate subsection (e)'s coverage completely; it only excludes statutory claims, and plenty of common-law claims remain covered by that subsection. So the exclusion is valid, and it applies. That should be the beginning and end of the analysis." *Id.*

The Illinois Appellate Court rejected the *Wynndalco* analysis on other grounds as well, including the applicability of *ejusdem generis* and the result if *ejusdem generis* did not apply. According to the court, "the canon *ejusdem generis* is not some inexorable command that must always result in limiting the general terms by virtue of the specific ones that precede it; sometimes, the language is not readily susceptible to such a limitation, or the canon would result in an outcome contrary to the intent of the contracting parties or the legislature." *Id*., ¶59 (Internal citations omitted). Nevertheless, the court found that *ejusdem generis* could be applied to reasonably read the exclusion as limited to statutes that protect personal privacy, which would still include BIPA. *Id.* at ¶¶77-78. The court thus concluded that, "In the end, it makes no difference to the outcome of our analysis whether we employ the limiting gloss of *ejusdem generis*, because the result is the same. If we limit the meaning of the catchall phrase as limited to the protection of personal privacy, the catchall excludes coverage for liability arising from BIPA lawsuits, which clearly concern personal privacy. If we cannot limit that catchall phrase, then the phrase is given its full breadth as written—and likewise excludes coverage for BIPA liability." *Id.* at ¶77 (Internal citations omitted).

While the Court is bound to follow *Wynndalco* for the time being[3], *Wynndalco* is distinguishable and not controlling here. This Court should follow *Visual Pak* because it addresses the same exclusion at issue in this case, and *Wynndalco* did not. Moreover, *Visual Pak* is the best

---

[3] *See Luna v. United States*, 454 F.3d 631, 636 (7th Cir. 2006)(("[D]ecisions of intermediate state courts . . . do not themselves liberate district judges from the force of our decisions…If a district court concludes that the intermediate state appellate courts have correctly answered a question this court botched, it should 'report [its] conclusions while applying the existing law of the circuit.'").

indicia of how the Illinois Supreme Court would decide the issue of whether the Recording and Distribution Exclusion applies to BIPA. *See Clarin Corp. v. Massachusetts Gen. Life Ins. Co.*, 44 F.3d 471, 474 (7th Cir. 1994)(It is well established that a federal district court is bound to follow the decisions of the state's highest court when addressing a state law claim.); *Todd v. Societe Bic, S.A.*, 9 F.3d 1216, 1228 (7th Cir. 1993)(The decisions of the state's intermediate appellate courts are considered the best indicia of state law in the absence of a decision from the state's highest court.); *Fidelity Union Trust Co. v. Field,* 311 U.S. 169, 85 L. Ed. 109, 61 S. Ct. 176, reh. den. 311 U.S. 730, 85 L. Ed. 565, 61 S. Ct. 438 and reh. den. 314 U.S. 709, 86 L. Ed. 565, 62 S. Ct. 118 (1941)(If the highest state court has not addressed the issue, federal courts should ascertain and apply state law as pronounced by intermediate state appellate courts.).

*Wynndalco* dealt with the Distribution of Material in Violation of Statutes Exclusion. *Visual Pak*, however, addressed the Recording and Distribution of Material or Information in Violation of Law Exclusion. In doing so, the *Visual Pak* court found there was "no small difference" between the exclusions' titles because while the title "Distribution of Material in Violation of Statutes" does not "scream privacy", the "[r]ecording *** of *** information in violation of law" title "certainly brings to mind the secrecy prong of the privacy interest—the notion of illegally taking and keeping a record of one's information. Indeed, it is hard to imagine what else it could mean; in what other context would it be illegal to keep a record of someone's information, if it were not personal, confidential information?". *Id*. at ¶72. Thus, the terms used in the catchall taken together with the title's reference to "recording *** of *** information," and with the four statutes that address personal privacy in their different ways, the court found that it was not unreasonable at all to read into this exclusion the gloss of statutes that protect personal privacy. *Id.* at ¶73.

This is significant because *Wynndalco* found there was nothing in the Distribution of Material in Violation of Law Exclusion to suggest that it was reasonable to construe it as limited to statutes protecting personal privacy. However, the Illinois Appellate Court has made clear that the exclusion in this case – the Recording and Distribution of Material or Information in Violation of Law Exclusion – when examined as a whole may reasonably be read with the gloss of statutes that protect personal privacy. As a result, the Recording and Distribution Exclusion may be construed in a narrower way that includes BIPA, a statute that protects personal privacy, and that avoids "swallowing coverage" for many of the "personal and advertising injury" offenses. Indeed, as the Seventh Circuit found, "Reading the exclusion to apply solely to injuries resulting from violations of statutes that protect privacy interests thus avoids the problem of the exclusion swallowing the policy's coverage provisions for 'personal and advertising injuries'." 70 F.4th at 1002-03. Thus, in contrast to the exclusion in *Wynndalco*, the Recording and Distribution Exclusion in the Policies here is not ambiguous. Accordingly, Citizens submits that the Court should follow *Visual Pak* and hold that the Recording and Distribution Exclusion unambiguously precludes Plaintiffs' duty to defend and indemnify the Sanchez Lawsuit.

**B. LSL Has Failed to Demonstrate any Ambiguity in the Plain Language of the Access or Disclosure of Confidential or Personal Information Exclusion and the Exclusion Must Be Applied as Written Because it Does Not Result in Illusory Coverage.**

LSL asserts that "it is black letter law that exclusions are to be narrowly construed and in favor of the insured". (ECF No. 36, p. 2-3). On this basis, it argues that the Access or Disclosure Exclusion cannot be interpreted to apply to biometric information because biometric information is purportedly unlike the categories of information enumerated in the exclusion. This argument is unavailing for several reasons. First, this argument is based on a misstatement of the law in Illinois. The Illinois Supreme Court has expressly held that, "The rule that policy provisions limiting an

insurer's liability will be construed liberally in favor of coverage ***only applies where the provision is ambiguous***." *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 433 (Ill. 2010)(emphasis added); *State Farm Mutual Automobile Insurance Co. v. Elmore,* 2020 IL 125441, ¶ 21 (Ill. 2020). Thus, a court may not read an ambiguity into a policy just to find in favor of the insured. *Elmore*, 2020 IL 125441, ¶21. If the words of a policy can reasonably be given their plain, ordinary, and popular meaning, the provisions should be applied as written, and the parties should be bound to the agreement they made. *Id*.; *Munoz,* 237 Ill. 2d at 433(" If the language is unambiguous, the provision will be applied as written, unless it contravenes public policy.").

Second, LSL's argument confuses when and how limiting canons of construction such as *ejusdem generis* or *noscitur a sociis* apply. Illinois law is clear that canons of construction cannot be used to create an ambiguity in the plain language of a policy. *See Menke v. Country Mutual Insurance Co*., 78 Ill. 2d 420, 423, 401 N.E.2d 539, 541 (1980); *Tourdot v. Rockford Health Plans, Inc.*, 439 F.3d 351, 353-54 (7th Cir. 2006)(rejecting party's effort to use *ejusdem generis* to create and then resolve ambiguity in policy language in order to avoid otherwise facially broad scope of exclusion for "any illegal act"). *Visual Pak* also clarified that *ejusdem generis* is not some inexorable command that must always result in limiting the general terms by virtue of the specific ones that precede it. 2023 IL App (1st) 221160, ¶59 (Internal citations omitted). Thus, if a phrase is not susceptible to a limiting canon of construction then it is given its full breadth. *Id*. at ¶77 (internal citations omitted).

Applying these well-settled principles here it is clear that the Access or Disclosure Exclusion is not ambiguous. By its plain language it applies to confidential ***or personal information***, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or ***any other type of nonpublic***

***information***. LSL cannot reasonably dispute that biometric information is personal information or "any other type of nonpublic information". *See Cothron v. White Castle System*, 20 F.4th 1156, 1159 (7th Cir. 2021)*(*"The Illinois General Assembly adopted the Act in 2008 in response to increased commercial use of biometric data. Biometrics are 'biologically unique' ***personal*** identifiers, id. § 14/5(c), and include iris scans, face geometry, and, relevant here, fingerprints, id. § 14/10. Unlike other sensitive ***personal information***, like social security numbers, once compromised biometrics cannot be changed. § 14/5(c))(emphasis added); *Herron v. Gold Std. Baking, Inc.*, 2021 U.S. Dist. LEXIS 69336, 2021 WL 1340804, at *1 (N.D. Ill. 2021)("Enacted in 2008, BIPA aims to protect the privacy interests of ***personal*** biometric information, including fingerprints.")(emphasis added); *Thermoflex Waukegan, Ltd. liability Co. v. Mitsui Sumitomo Insurance USA, Inc.*, 595 F. Supp. 3d 677, 684-685 (N.D. Ill. 2022)(biometric information is nothing if not "personal" information). Therefore, on its face, the exclusion broadly applies to biometric information. The exclusion consequently must be applied as written unless it is ambiguous, *i.e.*, susceptible to two reasonable interpretations. *West Bend Mutual Insurance Co. v. Athens Construction Co.*, 2015 IL App (1st) 140006, ¶ 27 (1st App. 2015)(a contract term is ambiguous if it can reasonably be interpreted in more than one way); *Munoz*, 237 Ill. 2d at 433("If the language is unambiguous, the provision will be applied as written, unless it contravenes public policy.").

LSL, however, has not offered any other reasonable interpretation of this exclusion. Indeed, in citing to cases such as *Am. Family Mut. Ins. Co. v. Caremel* and *Citizens Ins. Co. v. Thermoflex*, it argues that limiting canons of construction that would narrow the exclusion's applicability to only those categories of information that are similar to those listed in the exclusion do not apply because the categories listed do not share a common attribute amongst themselves and/or with

biometric information. In other words, the broad and plain language of the exclusion cannot be interpreted as limited to only those categories of information similar to those listed in the exclusion. The plain language in the exclusion consequently must be given its full breadth. *Visual Pak*, ¶59. LSL, therefore, has not offered any other reasonable interpretation of the exclusion. The only reasonable interpretation of the exclusion is that it applies to BIPA, which is "personal information including any other non-public information". As there is only one reasonable interpretation of the language, the exclusion is unambiguous.

Further, *Visual Pak* makes clear that no ambiguity is created by any purported conflict between the exclusion and definition of "personal and advertising injury".[4] The Illinois Appellate Court has admonished that courts must be extremely careful when talking about "conflicts" in policy language because every exclusion, to some degree, conflicts with the coverage provision, stating, "That is the very reason for the exclusion; it is an exception to the general rule of coverage…But the mere fact that an exception conflicts with the coverage provision does not, in and of itself, make it ambiguous—if it did, no exclusion would ever be upheld. Conflict and ambiguity are not the same thing." *Visual Pak,* ¶¶93-94. The Illinois Appellate Court has ruled that the mere breadth of an exclusion, alone, does not equate to ambiguity, nor does it render the

[4] The Seventh Circuit has not addressed the Access or Disclosure to Confidential or Personal Information Exclusion. *Wynndalco* interpreted an entirely different, separate exclusion. This Court is consequently not bound to follow *Wynndalco* with respect to the interpretation of the Access or Disclosure Exclusion. *See, e.g., United States v. Tollefson,* 367 F. Supp. 3d 865, 879 (E.D. Wis. 2019)(First and most obviously, the terms and statutes at issue are not the same; this Court is not bound to follow the Seventh Circuit's interpretation of a completely different law.). In the absence of a decision from the Seventh Circuit addressing this exclusion and predicting how the Illinois Supreme Court would interpret it, this Court is tasked with making that prediction. *See Rothschild Investment Corp. v. Travelers Casualty & Surety Co. of America,* No. 05 C 3041, 2006 U.S. Dist. LEXIS 30033, at *33 (N.D. Ill. May 4, 2006)(In the absence of a controlling state court decision, the task of a federal court sitting in diversity is to predict how the Illinois Supreme Court would decide case). As discussed, where, as here, the Illinois Supreme Court has yet to decide the issue presented, the decisions of the state's intermediate appellate courts are considered the best indicia of state law. *See Todd,* 9 F.3d at 1228.

coverage illusory because "The policy need not provide coverage against all possible liabilities; if it provides coverage against some, the policy is not illusory." *Id.*, ¶97 (internal citations omitted).

In this case, for the reasons discussed in Plaintiffs' opening brief, applying the Access or Disclosure Exclusion broadly, as written, to apply to "any other type of nonpublic information" does not eliminate coverage for all publications of material that violate a person's right of privacy. LSL does not dispute this point. As such, under Illinois law, the exclusion is not illusory. *Visual Pak*, ¶¶93-97. Pursuant to *Visual Pak*, because the exclusion is not illusory, there is no ambiguity and the exclusion must be applied as written.[5] The exclusion cannot be deemed ambiguous merely because it "conflicts" with the Insuring Agreement. As *Visual Pak* explained, that is what exclusions do by nature – limit coverage provided by the Insuring Agreement.

For these reasons, the holding in *Mitsui* was correct. The decisions cited by LSL are flawed for the reasons already set forth in Plaintiffs' opening brief and in light of *Visual Pak.*[6] Accordingly, the Access or Disclosure Exclusion unambiguously applies to biometric information and precludes Plaintiffs' duty to defend and indemnify the Sanchez Lawsuit.

### C. It is Not Reasonable to Interpret the Employment-Related Practices Exclusion as Applying Only to Those Offenses Concerning an Employee's Performance.

LSL seemingly does not contest that a publication of biometric information which violates an employee's right of privacy is similar to harassment or defamation – offenses listed in the exclusion. Rather, LSL argues "Citizens fails to offer any explanation as to how the alleged

---

[5] This is in accord with decisions from the Seventh Circuit. *See Cincinnati Insurance Co. v. Eastern Atlantic Insurance Co.*, 260 F.3d 742, 747 (7th Cir. 2001)(policy was not illusory under Illinois law because it covered some injuries resulting from certain factual situations, just not the ones at issue, thus the exclusion though broad, was not so broad as to make the coverage illusory and it must be enforced according to its terms); *See Farmers Automobile Insurance Ass'n v. St. Paul Mercury Insurance Co.*, 482 F.3d 976, 979 (7th Cir. 2007)(To narrow coverage is not to make coverage illusory. Where coverage is not illusory the exclusion must be applied as written).

[6] All of the cases cited by LSL, including Westfield v. LSL, were decided prior to Visual Pak.

disclosure of employee's fingerprints has any connection to an employment practice which is related to an employee's performance." (p. 7). This argument misses the mark. As set forth in Plaintiffs' opening brief, the exclusion as written does not require that an employment-related practice, policy, act or omission relate to an employee's performance. The exclusion applies to "personal and advertising injury" to a person arising out of employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person. There is simply no language in the exclusion stating these offenses must relate to performance. Importantly, such a construction is negated by the offenses enumerated - harassment, humiliation, discrimination - which may occur in the workplace but do not necessarily relate to an employee's performance. Thus, LSL's interpretation is neither reasonable nor does it comport with the well-settled rules of policy interpretation. *See Barth v. State Farm Fire & Casualty Co*., 228 Ill. 2d 163, 174 (2008)("In determining whether an ambiguity exists, it is improper to read additional language or terms into the agreement.").[7]

Decisions such as *Mullins* that improperly found the exclusion only applies to performance related offenses relied on *American Alliance Insurance Co. v. 1212 Restaurant Group, L.L.C.*, 342 Ill. App. 3d 500, 794 N.E.2d 892 (1st Dist. 2003). However, the Illinois Appellate Court has since clarified that this exclusion cannot be so narrowly construed. *See West Bend Mutual Insurance Co.*

[7] Moreover, companies often face lawsuits for such things as allowing the unauthorized disclosure of "private facts about plaintiffs, such as their financial history, medical history, and beneficiary information," or for spying on one's own employees and thus obtaining private information about employees' "family problems, health problems, sex lives, future work plans, and attitudes about [the employer]." *Visual Pak Co*., 2023 IL App (1st) 221160, ¶ 101. Such invasions of privacy are undoubtedly similar to harassment or defamation. Yet, pursuant to LSL's interpretation, these claims would never fall within the ambit of the exclusion even though they typically are covered by employment practices liability policies. Accordingly, it is not reasonable to interpret the exclusion, which applies to "employment-related practices, policies, acts or omissions, such as defamation, harassment, humiliation, discrimination", as only pertaining to practices, policies, acts or omissions involving an employee's performance.

*v. Rosemont Exposition Services,* 378 Ill. App. 3d 478, 488-89 (1st Dist. 2007)("we believe that to construe the ERP exclusion's use of the phrase 'employment related' as referring exclusively to matters related to employment performance would unduly limit an otherwise broad and unambiguous term."). For these reasons and those discussed in Plaintiffs' opening brief, the exclusion broadly applies to employment-related practices such as invasion of an employee's biometric privacy because it is similar to employment-related practices such as harassment and defamation and injures each individual employee such that it is necessarily directed at that employee. The Employment-related Practices Exclusion, therefore, unambiguously applies to preclude Plaintiffs' duty to defend and indemnify the Sanchez Lawsuit.

**D. The Irrefutable Evidence Demonstrates LSL's 18 Month Delay in Providing Notice of the Sanchez Lawsuit was Unreasonable as a Matter of Law because it is a Sophisticated Insured as it was Represented by Counsel and the Policies do Not Give Discretion to the Insured as to which Suits it Must Report.**

LSL's assertion that it is not a sophisticated insured in insurance matters is untenable under Illinois law based on the incontrovertible fact that LSL was represented by counsel in the Sanchez Lawsuit. (ECF No. 37, ¶¶38-40). *See AU Electronics, Inc. v. Harleysville Group, Inc.,* 82 F. Supp. 3d 805, 815 (N.D. Ill. 2015)(AU's representation by counsel gave it sophistication in commerce and insurance).[8] LSL also does not and cannot dispute that the firm representing LSL, Amundsen Davis, practices in the area of insurance coverage. (Id., ¶42). This factor, therefore, supports that LSL did not act reasonably in failing to provide notice for over 18 months. Moreover, there is no

[8] *See also MHM Servs., Inc. v. Assurance Co. of Am.,* 2012 IL App (1st) 112171, 975 N.E.2d 1139, 1159 (1st App. 2012)(noting that because insured had litigation counsel, it was sophisticated in commerce and insurance); *Northbrook Property & Casualty Insurance Co. v. Applied Systems,* 313 Ill. App. 3d 457, 467 (1st Dist. 2000)(having retained outside counsel who could have made a coverage evaluation, was not an unsophisticated insured); *Amerisure Insurance Co. v. Laserage Tech. Corp.,* 2 F. Supp. 2d 296, 305 (W.D.N.Y. 1998)(applying Illinois law)("During the period of delay, they were represented simultaneously by two different law firms. Accordingly, it cannot reasonably be argued that the defendants are unsophisticated.").

dispute that LSL had the subject Policies, at least, by March 2021 – 16 months before it provided notice to Plaintiffs. (Id. ¶6). Under Illinois law, LSL is charged with the knowledge of the content of the Policies. *Acuity v. Osler Industries, Inc*., 408 Ill. App. 3d 1122, *10 (1st Dist. 2011).

LSL's purported excuse that it believed there was nothing to report to Plaintiffs because the Sanchez Lawsuit was stayed is not reasonable. The Policies plainly require the insured to notify Plaintiffs of all "suits". It makes no exception for "suits" that are temporarily stayed. A stay is not a dismissal. Illinois law is clear that where, as here, the policy requires notice of a suit "as soon as practicable", the insured is not contractually entitled to exercise discretion as to whether to give notice.[9] Therefore, the stay of the Sanchez Lawsuit is not a valid excuse for the failure to comply with the Notice Condition under Illinois law. Further, LSL ultimately gave notice to Plaintiffs of the Sanchez Lawsuit while the suit was still stayed belying the argument or belief that there was nothing to report. (Id., ¶49). Moreover, LSL cannot escape that its counsel's (which practices in the area of insurance coverage) failure to read or appreciate the policy terms does not negate its duty to exercise due diligence in providing notice to its insurer.[10]

Contrary to LSL's assertion, *Osler Industries, Inc*., 408 Ill. App. 3d 1122 is on point. As in *Osler*, LSL was represented by counsel in the Sanchez Lawsuit. In *Osler*, the insured made the decision not to report the suit based on its belief it did not need to notify its insurer of the suit because it believed the suit was meritless. Similarly, here, LSL failed to comply with the clear

---

[9] *See MHM Services v. Assurance Co. of America,* 2012 IL App (1st) 112171, ¶ 60 (1st App. 2012)(where policy required notice of suit "as soon as practicable" the insured was not to entitled to exercise discretion as to whether to give notice regardless of the amount of potential liability); *AU Electronics, Inc.,* 82 F. Supp. 3d at 815 (The policy categorically required that Harleysville 'receive written notice of the claim or suit as soon as practicable.' There is no qualification or condition: if suit, then notice.").

[10] *See Northbrook Property & Casualty Insurance Co.,* 313 Ill. App. 3d at 467-68; *AU Electronics, Inc.,* 82 F. Supp. 3d at 815; *Sentinel Insurance Co. v. Cogan,* 202 F. Supp. 3d 831, 839 (N.D. Ill. 2016); *Laserage Tech. Corp*., 2 F. Supp. 2d 296; *see also Modrowski v. Mote,* 322 F.3d 965, 968 (7th Cir. 2003)("clients ... must 'vigilantly oversee,' and ultimately bear responsibility for, their attorneys' actions or failures").

terms of the Policies and improperly exercised its own discretion in declining to provide notice based on its belief that a stayed suit "was nothing to report". The court in *Osler* found the 9 month delay based on similar facts unreasonable as a matter of law. Here, the delay is even more unreasonable as 18 months passed between LSL becoming aware of the Sanchez Lawsuit and providing notice to Plaintiffs.

The cases cited by LSL are not binding and/or are inapposite. In *Mullins*, the court found a question of fact existed as to whether the insured was reasonable in ascertaining whether the policies covered the suit, which is not the issue here as LSL is not asserting a belief of non-coverage as its excuse for the delay in notice. (*See* ECF No. 37, ¶45). In *Tony's Finer Foods*, the court improperly gave undue weight to whether the insurer was prejudiced by the delay. However, Illinois law is clear that once it is determined that the insurer did not receive reasonable notice of a lawsuit, the policyholder may not recover under the policy, regardless of whether the lack of reasonable notice prejudiced the insurer. *See Country Mutual Insurance Co. v. Livorsi Marine, Inc*., 358 Ill. App. 3d 880, 888 (1st Dist. 2004), aff'd 222 Ill. 2d 303, 317 (2006). Accordingly, the Court should decline to follow those cases and follow *Osler* and find that LSL's 18 month delay in giving notice of the Sanchez Lawsuit was unreasonable as a matter of law.

## IV. CONCLUSION

For all of these reasons, based on the incontrovertible facts, Plaintiffs have no duty to defend or indemnify LSL for the Sanchez Lawsuit. Accordingly, Plaintiffs are entitled to judgment in their favor on all Counts in the Complaint, as a matter of law.

Respectfully submitted,

Citizens Insurance Company of America and
Hanover Insurance Company

By: /s/ Kelly M. Ognibene
One of their Attorneys

Jeffrey A. Goldwater, Esq. (ARDC #6189014)
Kelly Ognibene, Esq. (ARDC #6297327)
Lewis Brisbois Bisgaard & Smith, LLP
550 West Adams Street, Suite 300
Chicago, Illinois 60661
312-345-1718
312-345-1778-facsimile
jeffrey.goldwater@lewisbrisbois.com
Kelly.ognibene@lewisbrisbois.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2024, I served all parties of record by electronically filing the foregoing document using the ECF system.

*/s/ Kelly M. Ognibene*